Mr. Gelfand, we'll hear from you first. Good morning, and may it please the court. Mr. Petty stands convicted of a crime for which a grand jury to this day has never found probable cause of all essential elements. After a trial during which the indictment was constructively amended over the defendant's trial during which one juror, juror number one, could admittedly not hear everything. This requires reversal. The first issue is the issue about the indictment sufficiency. The trial court instructed the jury on a violation of 21 U.S.C. section 846. However, as a practical matter, a plain reading of the indictment omits two of the essential elements of section 846. This is error of a constitutional magnitude. The right to be tried only on charges found by a grand jury is a substantive right. The U.S. Supreme Court held that in the Sterone case. A series of precedent after the Sterone case has only reaffirmed that. In fact, Justice Scalia in a dissenting opinion referencing the granting of cert on a case called Resendez-Ponce actually said he would find that error to be structural. To this day, Mr. Petty has never been charged with section 846, but he is incarcerated for a violation of section 846. The only statute actually cited in the indictment is 21 U.S.C. 843 subsection A subsection 3. The indictment omits the mens rea element of section 846 voluntarily and the specific intent element of 846 that he knew the purpose of the agreement or the understanding. So is any of this actually before us or does Rule 12 take care of it all? I know they've got three different theories as to why Rule 12 doesn't work, at least three, but it seems to me that at least the plain language applies here. Your Honor, Rule 12, as the court is referencing, was amended in 2014. The year before Rule 12 was amended, this court in a case called Villareal expressly held that the claim that the indictment fails to state an offense may be erased at any time. Rule 12 under the Rules Enabling Act cannot abridge or modify a substantive right such as the right to be tried only on charges found by a grand jury. So I do think that this is before this court. You don't think it's procedural in the sense that it's just a timing issue? It's not a claims processing rule because the claim is already before the court, but it's a timing issue. You've got to bring it up earlier. I know that we said something different, but we didn't have the benefit of Rule 12 when Villareal was decided. Your Honor, I think it's a timing issue in part, but I think that it's a timing issue that governs a substantive constitutional protection that would essentially erase the Fifth Amendment protection to be tried only on charges actually found by a grand jury. Even within the plain language of Rule 12, there's a good cause exception. And I think that it's clearly good cause to rely on precedent, Villareal in particular, the Rules Enabling Act, the Fifth Amendment plain language of the Constitution itself, to raise this issue at trial instead of before trial. So in this circuit, then, based on Villareal, if we agree with your argument, then you can raise it any time you want. I mean, that'll be the rule going forward because we held in Villareal that you can. Your Honor, first of all, I think that the court could go that far. I don't think the court has to go that far because the question in this case, unless or until Villareal is no longer good law, provides a good cause exception to Rule 12. So if this court wanted to decide this issue more narrowly, hypothetically, the court could say that Mr. Petty had good cause to rely on authority that was good authority at the time that this trial occurred. But moving forward, that would no longer constitute good cause. As a practical matter, this is also plain error even under Cotton. And what's interesting is when Rule 12 was amended in 2014, it was amended, at least per the committee notes, under the theory that the US Supreme Court's 2002 decision in Cotton essentially established a jurisdictional limitation, that this was no longer, or at least was no longer considered to be a jurisdictional issue. Cotton was the law when this court decided Villareal in 2013. Cotton was the law at this trial. Cotton itself, in the plain language, even applies a plain error standard that even if this court were to determine, which I adamantly do not think this court should, that this was somehow waived because it was raised at the trial itself as opposed to an advance of trial, plain error still applies. The bottom line is the error was obvious. It was plain. It affected substantial rights. And it affects fairness, integrity, and public reputation of judicial proceedings. What is the error? I thought you pretty much acknowledged in the district court that you were on notice of the conspiracy charge. Your Honor, we were on notice, really, of the issue here? No, Your Honor. As opposed to whether the? No, Your Honor. I would respectfully push back on the issue through the lens of notice. The issue here is the Fifth Amendment constitutional right to have a grand jury find all essential elements. It's not about a defendant's notice. A defendant can believe that the defendant hypothetically is charged with bank robbery if the indictment only says, on this date, Mr. Jones robbed a bank. Doesn't the jury verdict render any grand jury probable cause error harmless? If you have a jury finding it beyond a reasonable doubt? No, Your Honor, because the grand jury right is separate from the jury right. In other words, what that would essentially establish is that the grand jury right to be tried only on account on a felony on which the grand jury has found probable cause as to all essential elements, that would be eliminated if all that had to happen is a pettit jury being properly instructed. There are two separate rights at play here. And we cited in our brief a Southern District of Ohio District Court case that does a very good job of actually laying out why those two separate rights have to be considered in cases such as here, where the grand jury doesn't find probable cause of all essential elements, but where a trial jury is at least hypothetically instructed properly as to all essential elements. Furthermore? Which element, again, do you say is missing from the indictment? The mens rea of voluntarily and knowing the purpose of the conspiracy, both of which are elements of Section 846. Well, but it does say knowingly and intentionally conspired. It says knowingly and intentionally conspired. It does not say voluntarily. And it does not say that at the time that Mr. Petty entered into this conspiracy, he knew the purpose of the conspiracy. Those are two essential elements based on precedent. Oh, boy. That would seem to knock out pretty much all conspiracy indictments, wouldn't it? Even if they cite 846. I'm not familiar. I think this is pretty standard language, knowingly, intentionally conspire. Most of the indictments say, and he knew the purpose of the conspiracy at the time he joined it. Your Honor, I am just anecdotally speaking. I've certainly seen indictments that do allege the proper specific purpose. But I would also say that an indictment that includes this, what the court has referred to as, quote unquote, standard language, and the citation to the statute that's actually being charged, coupled together, that adds to the aspect of whether or not a grand jury found probable cause. Because presumably, the grand jury was considering that charge. This indictment, by the plain language. You mean, presumably, the grand jury read the statute? Or was instructed on the statute. As a practical matter, this indictment, just the plain language, could just as easily be interpreted to charge a 371 conspiracy, a conspiracy to commit an offense against the United States, as it does an 846 conspiracy. It includes the conspiracy language. And it references a substantive offense. The point here is, the indictment itself has to clearly allege all of the essential elements of the crime that's actually charged. And that didn't happen here. It's also a constructive amendment of the indictment, though, because this is admittedly a different theory. But this is a theory under which the timing cannot possibly be disputed. Because the constructive amendment challenge was raised at the only appropriate time, the jury instruction conference. It was timely. There's no Rule 12 limitation. And the law clearly says, even as the government concedes on page 30 of its brief, that if you submit a jury instruction that includes elements that the grand jury never found, then as a practical matter, that by definition is a constructive amendment. They both arise out of the Fifth Amendment grand jury, right? And that's the core issue that I believe is before this court. Furthermore, there's case law that we cited that even based on a motion for a judgment of acquittal, a Rule 29 motion, most of the time those issues are very deferential and understandably so, with every inference under the sun essentially going towards supporting the verdict. That's not the issue here that we're primarily attacking in this case, with the exception of one specific fact argument we made in our briefs. The issue that we're attacking is, the court has to determine the essential elements of the crime charged and whether there's a reasonable doubt. Again, this comes back to whether or not the indictment ultimately charged an offense. That was not waived, to the extent that there's an argument that Rule 12 required that it be raised in advance of trial. The good cause exception can and does apply. And even a plain error review would establish that this indictment is fatally flawed. That's not the only problem with this trial, though. Juror number one expressly admitted, after she was seated on the jury, so after Vordaer, but before opening statements, that she could only hear 95% of what was said during Vordaer. She concealed those issues when the court expressly asked questions about whether there were any impairments or disabilities that any of the jurors had until after she was selected by the parties and by the court as a juror who did actually participate in the deliberations. Even when the jury was polled at the end of trial when the verdict came down, the courtroom was as quiet as this courtroom is now. The clerk looked at her in the eye and said, juror number one, is this your verdict? She could not hear the question. And I mean this with no disrespect towards this older juror, but as a practical matter, Mr. Petty is legally and constitutionally entitled to a jury of 12 who can actually hear everything that happens in the courtroom, everything that happens during jury selection, everything that happens during trial itself. So which is the real argument here? Maybe they're both arguments. Is it the fact that he didn't have a juror who could hear, or is it the fact that the juror was dishonest in your view? It's a combination of two arguments, Your Honor. I think that if I had to choose between the two, I would point the court's attention to the Williams rule, where we clearly establish here that the juror failed to honestly answer a material question, and a correct response would have been a basis for a strike for cause. We moved a striker for cause. And in this particular instance, either when that question, or multiple questions, were asked by the district court, by the judge, she either didn't hear the questions, and that's why she didn't answer them, or she answered them dishonestly. In either event, we're entitled to a new trial with a jury of 12 that can actually hear, if I may reserve the rest of my time for rebuttal. You may. Thank you for your argument. All right, Mr. Martin, we'll hear from you. May it please the court, Matt Martin, on behalf of the United States. Appellant Derek Petty provides this court with no reason to disturb his conviction or supervised   and I'm going to try to answer them all. The judge is made by the appellant in this appeal with respect to the sufficiency of the indictment. But I want to start by really framing the issue in this case with respect to the timeliness of appellant's motion to dismiss, which was made at the close of the government's evidence at trial. The decision of when to file a pretrial motion is not a substantive right. And that's what appellant is asking this court to find here. So Rule 12b's requirement, or excuse me, Rule 12b3's requirement that a pretrial motion, particularly a motion to dismiss the indictment for failure to state an offense, must be raised before trial has no bearing on Mr. Petty's Fifth Amendment right. If we look at Rule 12b3, it has built-in safeguards. It states that the pretrial deadline applies only where the basis for the motion is reasonably available at that time, and the motion can be decided without a trial in the merits. That's specifically what we have here. We have a motion to dismiss an indictment for failure to state an offense that claims that there's fatal omissions in the indictment that appellant could have raised at any point in the year and a half that this case was pending before trial. And what Rule 12b3 embodies is something that the Supreme Court has recognized for decades, most recently in the Cotton decision that's really been discussed at length in the briefs and then here at the argument this morning. And that is this. A criminal defendant may forfeit a constitutional right if it's not raised in a timely manner. And that's exactly what we have here. And it's important, and I think it's clear, that Mr. Petty's decision to wait was deliberate. Mr. Petty's decision was strategic. Mr. Petty admits as much in his opening brief that the decision to wait was in Mr. Petty's best interest, to wait until jeopardy attached to attack the indictment with a motion to dismiss. All the while, this is a motion that has to be made prior to trial to avoid the type of issues that we're faced with here today. You mentioned waiver. Is it waiver or forfeiture? Cotton would suggest forfeiture. But again, Cotton didn't have the benefit of Rule 12. If I said waiver, I misspoke. I'm suggesting forfeiture. What we have here is Mr. Petty taking a huge risk by sitting on a motion, a motion that, in fact, if you review the trial transcript, had been prepared in writing, springing it on not only the district court, but the government at the time the government concluded its case. How does this happen as a practical matter? Doesn't the office have some kind of review process of indictments to make sure they're drafted properly? Yes. Yes, Judge Colleton. And that's a multiple people. That's more than a fair question. Because the citation to Section 846 is missing from the indictment. Yeah, I think normally that would be in the indictment. Correct. It's not just the one AUSA. You've got a process where it gets reviewed by somebody else. We do. We do, Judge. And this is, unfortunately, a situation where that passed the oversight. Yeah, I understand. It didn't work. I just wondered if you've got a good process for it. Yes. Repetition. Go ahead with your legal argument. I just wanted to understand that. Yes, Your Honor. And even with the missing citation, Rule 7c makes clear that that's not fatal in the indictment unless the defendant was misled and thereby prejudiced. We know from defense counsel's own admission at trial, particularly at Volume 3, the trial transcript at page 151, there was no notice issue. They knew exactly what the indictment alleged and indicated to the district court that it was very clear that a conspiracy is what was charged. Rule 12b3, there's a lot of emphasis on this Villarreal case. The government's simply asking the court to do what the court did back then in Villarreal, and that's apply the version of Rule 12b3 that's in effect at the time of the case. And this court has done that. And first, in United States versus Webster, which Judge Woolman may recognize after serving on the panel in that case, this court recognized in footnote 3 that effective December 1 of 2014, a motion to dismiss an indictment for failure to state an offense, which was at issue at the time in that case, had to be raised before trial. So there's recognition of that rule after it's passed. And then just three years ago in United States versus Fogg, this court enforced that rule. The defendant in that case failed to raise by pretrial motion a motion to dismiss the indictment for failure to state an offense, raising the same argument that Mr. Petty raises before the court here. And the court said, we're not going to reach the merits of your argument because you didn't bring this challenge at the appropriate time under Rule 12b3, and therefore it's foreclosed. That's what the court should do here. Follow the precedent in Fogg. It doesn't require Villarreal to be disturbed or overruled. We're simply asking the court to enforce and apply the rule of procedure that's in place at the time of the case. But even if the appellant's motion had been timely, the indictment is sufficient on its face. It's indictment, excuse me, it's sufficient for the two main arguments that appellant raises here. The first is the missing citation to Section 846. As we've already reviewed, Rule 7c says that that's only fatal if it misleads the defendant. We know that wasn't the case here. Appellant's second primary argument is that the indictment doesn't allege two elements of the 846 conspiracy. And those elements are pulled or quoted from this court's pattern verdict director for an 846 conspiracy. Nowhere has this circuit held that what's must mirror what must then be proven beyond a reasonable doubt at trial. In fact, in United States v. White, this court looked at the same language that's contained in the indictment charging Mr. Petty, that is, combining conspiring, confederating, and agreeing together with another as language sufficient to charge an 846 conspiracy. And if you look at the word conspire by itself, the Supreme Court has examined several other words and has held there are certain words in our practice that are so legally definite that they put the defendant on notice of the charge. This was first discussed by the Supreme Court in Hamling when talking about the word obscene under the prosecution for mailing obscene materials. More recently, it was discussed in the Resendez-Pons case that appellant cites in his reply. There, the word at issue was attempt. And it's interesting because the word attempt is under the same 846 charges as a conspiracy. Section 846 covers both conspiracy charges and attempt charges for any overt or substantive offense under Title 21 of the Controlled Substances Act. So the word conspire, it really carries its own meaning. But not only that, the mens rea element that appellant pleads this court to find is missing, it's pled. It's alleged in the indictment. As Judge Colleton pointed out, knowingly and intentionally is found directly before the phrase combine, conspire, confederate, and agree together. Appellant wants this court to find that that's not enough. Judge Colleton is correct in that. Does it matter, his point about 371 versus 846, whether it could have been either or both? It doesn't matter. Because this couldn't have been a 371 allegation. There would have been fatal for another reason that it doesn't charge an overt act. The standard implicitly, it must be an 846. Well, not only that, but the substantive offense that's charged, the 843, is a crime under Title 21, which 846 can only apply to those substantive offenses. But this court announced in the United States versus Mallin, the standard here, did the indictment fairly put defendant on notice of the charge against him? By Mr. Petty's own admission to trial, the answer to that question is unequivocally yes. And if we play out the defendant's strategy here, if we play it out to the fullest degree, we can see that there's no issue with notice and that Mr. Petty was more than aware of what he was charged with. Defense counsel raised this motion after Jeopardy had attached. So let's just assume for the sake of argument that that motion had been granted. The government would have then gone back to the grand jury, fixed what is essentially a typographical error by including reference to Section 846, charged Mr. Petty. And then there's no question that Mr. Petty would have I don't know if it was a typographical error. I think it was an analytical error. An omission nonetheless, Judge. There's no question that Mr. Petty would have come back and said, hey, I've already been charged with this offense. Jeopardy's attached. This is a double Jeopardy violation, which is one of the ways we can determine if an indictment is sufficient. Does it allow a defendant to then plead double Jeopardy against a future prosecution? That's exactly what was Mr. Petty's plan and strategy and tactic in this case. Nothing else makes sense on why you would sit and wait on a dispositive motion. What about the constructive indictment argument? Because that isn't really arguably covered by Rule 12. It's not. There's no timeliness requirement. But for the same reasons that the indictment is sufficient to defeat a motion to dismiss, it's sufficient to defeat a constructive amendment argument. Same offense, and then the same offense is then instructed by the judge. So yeah, there is some stuff missing in the indictment, but at least it's the same offense, so no constructive. The elements are contained in the indictment, knowingly and intelligently, or excuse me, knowingly and intentionally combining, conspiring, confederating, agreeing together. We've got a short window for the term of the conspiracy. We've got the codefendant named, and we've got the substantive offense pled. All is sufficient for the indictment. The standard that this court announced in United States versus Shavers is whether the jury instructions taken as a whole created a substantial likelihood, substantial likelihood that the defendant was convicted of an uncharged offense. And it's interesting, in the Shavers case, the defendant there was prosecuted for an 846 conspiracy that contained the same language that the indictment does here. What has been altered by the indictment in comparison to the verdict director for an 846 offense? This isn't a situation where Mr. Petty was charged with one offense, and then the jury was instructed to consider him for a separate offense. What additional burden did Mr. Petty occur based on the pattern verdict director that was used? What about the offense changed? And so the constructive amendment argument is essentially just another way for challenging the sufficiency of the indictment. With respect to juror number one, the standard of review here is whether the district court's handling of allegations of juror misconduct and its denial of a motion for a new trial was an abuse of discretion. What appellant leaves out is the length that the district court went to ensure that juror number one heard the questions posed to the panel generally, and that she did not have an answer. And after that review with juror number one, the district court made several factual findings. One, that juror number one provided full and complete answers. Two, that she answered all the questions that were required. And three, that her issues with hearing were limited to the one-on-one follow-up engagement of individual jurors who had responses to the general questions. Juror number one told the district court unequivocally, I heard all the questions that you asked generally. I heard all the questions that were posed to the panel as a whole. I didn't have any answer. I live a pretty boring life. I think that's a random quote of what she said. There's no evidence, or there's nothing in the record to show that juror number one lied about a material question, whether she lied objectively, or whether she withheld information. Or two, that had she answered truthfully, because we know her answer. She said, I could hear everything that I needed to hear. I just didn't have any answers. That would not have been a valid basis for striking her for cause. Finally, with respect to the supervisory release violation, the district court's decision to revoke Mr. Petty's supervised release is reviewed for abuse of discretion while the fact finding supporting his decision is viewed for clear error. Mr. Petty asked this court to require the district court to re-litigate all the issues that were heard at trial. The district court found that based on the evidence adduced at trial, and that the court has thoroughly considered, having sat through the trial, Mr. Petty violated the conditions of his supervised release by committing another federal offense. I see that my time is coming to a conclusion. So in closing, I'll ask this court to affirm the district court's denial of Mr. Petty's motion to dismiss, affirm the denial for judgment of acquittal, and affirm the district court's revocation of Mr. Petty's supervised release. All right. Thank you for your argument. All right. Rebuttal, Mr. Goffin? Thank you, Your Honor. This was no typographical error. This was an omission of two essential elements, and the government would have this court basically apply a process of elimination as to which conspiracy, which crime was alleged. I point the court to two other facts in the record that I think are important as to this, even through the lens of notice. Number one, at the arraignment, the court's official docket read the indictment as a way of charging Mr. Petty with section 843A, not with section 846. The supervised release petition that is at issue in this case expressly says, at least as the probation office reads the indictment, that he was charged in this case with section 843, not with section 846. It's not that those two issues are necessarily dispositive of anything, but what they do is they underscore and they highlight the fatal constitutional flaw here, which is that there's elements that a grand jury have never found probable cause for that are included in the jury instruction. That's, at a minimum, a constructive amendment requiring a new trial. And in fact, under Villarreal, which I do believe is still good law, at least unless or until it's overturned, Mr. Petty had good cause, at the very least, to raise this, quote, at any time, end quote, which is what that precedent says. With respect to the juror issue, I would point the court's attention to page 149 of the transcript, where the district court expressly said, among other things, does anybody have any special disability, special problem, or the like, that would make serving as a juror difficult, in this case, or impossible for you? All right, again, I see no hands. The court had previously inquired, is there any other reason you couldn't serve fairly and impartially? Essentially, catch-all type questions. The problem is that this juror, in this case, did not provide truthful information that she couldn't hear everything that happened during Vordeyer. And the juror simply saying, it wouldn't have mattered, I wouldn't have answered differently, is meaningless if she couldn't hear, in the first place, what the question was. For all of these reasons, we would ask this court to reverse the conviction, and we would ask this court to rule in our favor. Thank you. Very well. Thank you for your argument. The case is submitted. The court will file a decision in due course.